The opinion of the court was delivered by
Brewer, J.:
The facts in this case are as follows : In the winter of 1879 and 1880, defendant, now plaintiff in error, put up a quantity of ice, in what is known as Ryan’s ice-house, in Leavenworth, Kansas. After endeavoring to negotiate a sale to one A. L. Stevens, defendant entered into the following agreement of partnership with plaintiff:
“This agreement, made and entered into this 21st day of April, 1880, by and between John Lamb, of Leavenworth, Leavenworth county, Kansas, and William Sexton, of Leavenworth, Leavenworth county, Kansas, witnesseth, that they have this day associated themselves together, under the name and style of the North western Ice Company, for the purpose of retailing ice in the city and county of Leavenworth, and state of Kansas, on the following terms and conditions, to wit: The said William Sexton puts in the concern 660 tons of ice, merchantable ice now at Ryan’s ice house on Five-Mile creek, in Leavenworth county, Kansas, and sells to the said John Lamb one span of horses, with their harness and wagon, now in the possession of the said William Sexton, and used as an ice-delivery wagon, in which ice the said John Lamb is to be an equal partner, upon the following terms to wit: The said John Lamb pays now over to the said William Sexton the sum of six hundred and fifty dollars, the receipt of which is hereby acknowledged and confessed, and is to pay the further sum of $150 dollars in cash, June 1st, 1880. The further sum of ($390) three hundred and ninety dollars, being the balance to be advanced by the said John Lamb, is to be taken out of the said John Lamb’s share of the proceeds, arising from the sale of the ice itself; the said John Lamb and William Sexton to be owners and partners in said ice and the proceeds thereof; the said team to be the sole property of said John Lamb, and not to be used for the partnership, unless paid for as other teams which are used by the company.
“In token of our mutual consent whereunto, we have hereunto set our hands, scrawls by way of seals, this 21st day of April, 1880. John Lamb. [seal.]
William Sexton, [seal.]”
*428 “Thereafter the partners appointed as their manager and agent, one C. E. Sexton, the son of defendant. At the close-of the season he made this report of sales, expenses and receipts :
STATEMENT OF THE BUSINESS OF THE NORTHWESTERN IOE COMPANY.
Total sales of ice...............................................................$1,572.30
Total expense.................................................................. 490.75
Net proceeds....................................................................$1,081.55
Paid 'William Sexton........................................................ 930.77J
Amount due J. Lamb........................................................ $150.77J
Bills not collected, $47.80.
Leavenworth, Oct. 12, 1880. C. E. Sexton.”
Dissatisfied therewith, plaintiff brought his action in the-nature of an action of accounting, in which he charged that defendant did not put into the concern 660 tons of ice, and that he did not make a correct account of the amount sold and the moneys received. The case was tried by the court without a jury, special findings of facts made, and judgment rendered in favor of the plaintiff for $632.13, as well as for one-half of the uncollected accounts, and one-half of the moneys reported by the manager as in his hands. From this judgment the defendant brings error to this court.
1‘ a^eement,p interpreted. The first question presented is as to the interpretation placed by the district court upon the contract between the parties. That contract the court interpreted as an agreement on the part of the defendant to put into the partnership 660' tons of ice. This interpretation we think is correct. Counsel argue that the contract was not on the part of the defendant executory; that is, that it was-J ' ' not an agreement that he would put into the-Ryan ice-house 660 tons, but an agreement that he does now put into the partnership a certain amount of ice, to wit, 660-tons already stored in the Ryan ice-house. Conceding that in a certain sense this is true, and still it is an agreement to put into the partnership 660 tons, in agreement amounting to a representation that he has that amount in the Ryan ice-house. It is not an agreement to put all the ice that he has in such ice-house, but only an agreement to put in 660 tons. *429 If, as a matter of fact, he had more than that amount in the Eyan ice-house — and by the affidavit of David Atchison Field, ■on a subsequent petition for a new trial, in a ease to be here•after considered by us, it appears that in 1881 said Atchison had 2,000 tons of ice therein — defendant would have been at ■liberty to make other disposition of any ice in excess of 660 tons. Such an agreement could not be considered as a mere •contract to put in whatever ice then belonged to him in the Eyan ice-house, whether the amount were 200 or 1,000 tons, but simply an agreement to put in 660 tons, which agreement was equivalent to a statement that he had that amount in the Eyan ice-house, and that that amount he would put into the partnership, reserving to himself the right to make any other disposition of any surplus amount he might have therein. It would be doing violence to the language to hold that, by this contract, the defendant agreed to put in all the ice he then had in the Eyan ice-house, be it ■ more or less, and that the plaintiff entered into the agreement, taking what ice the defendant had in the Eyan ice-house, be it less or ■more than 660 tons. The defendant had put the ice up, and the least that can be said of the agreement, in view of the facts, is, that it is a representation that > he had in such ice-house the 660 tons; and upon the basis of such representation, plaintiff entered into partnership and paid his money. If as a matter of fact the defendant had less than 660 tons, the plaintiff paid his money into the partnership upon a false basis, and was entitled to recover damages accordingly. We see no error in the ruling made by the court, in its interpretation of the contract.
*430 2'competent teatimony. *429 Upon the report made by the manager of the partnership, it would appear that only 160 or 170 tons were in fact sold, and that in the sale of so much ice the entire amount in the Eyan ice-house was disposed of; and this brings us to the second question presented. The court, over the objection of defendant, admitted the testimony of several witnesses that they had been in the ice business in the city of Leavenworth for a series of years, and that with ice properly handled and *430 managed, only a certain per cent, was lost by melting, etc. The question now presented is, was such testimony competent for the purpose of determining what amount of ice was originally in the ice-house? It is true that the most direct testitimony would be that of those who put ice up, or of parties-who measured the ice after it was already in the ice-house; (and yet we think such testimony was competent, and tended to show the amount of ice originally there. Counsel call it expert testimony, and say that it is not legitimate expert testimony; and yet it is the testimony of those experienced in the business of handling ice as to the ordinary waste in such handling, and therefore we think competent testimony. It tends most clearly to show either that the amount of ice claimed was not originally there, or that the defendant, or the manager, or some other party, had made improper disposition of such ice; for if ice properly handled loses in ordinary sale by retail only from 30 to 50 per cent., and if only 160 to 170 tons are reported as sold, then it follows either that the ice was improperly handled and managed by the agent, or that sales made were not reported, or that some parties had improperly taken .ice from the ice-house, or else that the amount of ice originally reported was not there; and while this was not the most direct and positive testimony, yet it certainly was testimony competent to be considered, and testimony, in the absence of more direct and satisfactory testimony, sufficient to sustain and uphold the conclusions of the trial judge. It is certainly testimony which, presuming good faith on the part of the agent, and good faith on the part of the defendant, tends strongly to show that there was a great mistake as to the amount of ice which in fact he had originally put up in the ice-house.
„ ... peten’tparoi’ testimony. It is objected that the court erred in refusing to permit the defendant to give parol testimony as to the terms of the agreement between himself and plaintiff. We see no error in the rulings of the district court in this’ reSpeet. The specific question which was ruled out was: “ State what conversation occurred between yourself *431 and the plaintiff about the sale of the ice, and what the agreement was.” The testimony was ruled out, on the ground that the agreement was in writing, and spoke for itself. Clearly this ruling was right. Counsel says that the court erred in this, that it refused to permit defendant to give his version of the trade after permitting the plaintiff to tell the history of the transaction. This statement is not borne out by the record. The plaintiff was asked, it is true, how much ice there was in the Ryan ice-house at the time of the purchase. The court permitted the plaintiff to answer this question, and he answered that he did not know. This is the only matter connected with the purchase in respect to which the plaintiff testified over the objection of the defendant.
4. Ice; experts; tí5neassus" A final error alleged is, that the findings are not supported by the evidence. In this, too, we are compelled to sustain the ruling of the district court. It is true the , . . • . direct testimony oí one witness who assisted in measuring the ice was to the effect that there were more than 660 tons of ice; but upon the testimony above referred to of several witnesses as to the per cent, of ice wasted in handling, we cannot say that the court had not sufficient evidence to sustain a finding against the direct testimony of this witness.
These are the principal matters of error alleged, and in them appears nothing to justify us in reversing the judgment of the district court, and it will therefore be affirmed.
All'the Justices concurring.