Cincinnati, N. O. & T. P. Ry. Co. v. Sanders & Russell.

CASE 14—ACTION BY SANDERS & RUSSELL AGAINST CIN., N. O. & T. P. RY. CO. FOR DAMAGES IN SHIPPING LIVE STOCK.—MAY 4.

# Cincinnati, N. O. & T. P. Ry. Co. v. Sanders & Russell.

| 118 | 115 |
| f129 | 179 |
| 129 | 665 |
| f129 | 666 |

APPEAL FROM MERCER CIRCUIT COURT—M. C. SAUFLEY, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF:, AND DEFENDANT APPEALS.   AFFIRMED.

CARRIERS—CONTRACT EXEMPTION FROM NEGLIGENCE—VALIDITY.

Under Constitution, sec. 196, prohibiting commons carriers from contracting for relief from any liability imposed on them by law, provisions in a bill of lading for stock that the shipper should feed, water and attend to the stock at his own risk while in transit do not relieve the carrier of its duty to look after the stock.

E. H. GAITHER AND JOHN GALVIN, FOR APPELLANT.

1. The grounds of the demurrer to the second paragraph of the answer is that it presents a contract for relief from its common law liability, and upon this ground alone it was sustained.

2. That the common law has no application to carriers of live stock has long been an accepted doctrine in this State.

3. If the right of the carrier of live stock to contract that the owner shall look after the wants of his stock while in transit, and the right to contract against loss by the heat of the weather or the crowded condition of the cars is prohibited by section 196 of the Constitution, the demurrer was properly sustained, but under no other assumption can the court justify this ruling.

4. If the overheating was caused by the heat of the weather, it was the act of God, and no liability attaches even under the common law.

5. That a carrier has the right to contract with the shipper to look after his own stock is not an open question.

6. Sustaining a demurrer to the second paragraph admits that the hogs died from the effects of heat and suffocation, and from the negligence of appellees in not properly attending to the stock as they contracted to do.

7. The court can not assume that there was negligence. In

Cincinnati, N. O. & T. P. Ry. Co. v. Sanders & Russell.

all cases where the court presumes negligence it is where the nature of the injury to the stock or the car gives rise to this presumption.

8. We submit that appellant was entitled to a peremptory instruction under the proof.

### AUTHORITIES.

L., C. & L. Ry. Co. v. Hedger, 9 Bush, 646; S. L. N. R. Co. v. McDonough, 21 Mich., 165; O. & M. Ry. Co. v. Taylor, 17 R., 568; Elliott on Railroads, sec. 1546; L. & N. R. R. v. Hawley, 10 R., 117; C., N. O. & T. P. R. Co. v. Gower, 11 R., 236.

J. T. WILSON AND W. C. BELL, FOR APPELLEES.

Our grounds of recovery are:

1. Delay in transit of ten or twelve hours with the stock in a crowded car in very hot weather.

2. Failure of the appellants to give proper care or attention to the stock in transit.

3. While the appellants contend that by the terms of the contract the plaintiffs or their agents were to attend the shipment and do certain specific things, it does not aver that they or their agents did not attend the stock or did not do the things imposed on them by the contract.

4. Appellant does not allege that the cars were overloaded or that the stock was crowded; that any of it suffocated or was injured or damaged by reason thereof.

5. It says: "Any loss or damage to the hogs was through the negligence of plaintiffs, as aforesaid." This is not a statement of a fact, but a conclusion.

6. We earnestly contend that all the matters set out in the second paragraph of appellant's answer falls within the prohibition of section 196 of the Constitution as being an effort "to contract for relief from its common law liability."

### AUTHORITIES CITED.

L., C. & L. R. R. Co. v. Hedges, 9 Bush, 645; O. & M. Ry. Co. v. Tabor, 98 Ky., 510; Ray on Negligence of Imposed Duties, p. 240; Ill. Cent. R. R. Co. v. Adams, 42 Ill., 474; Toledo W. & W. R. Co. v. Thompson, 71 Ill., 434; Toledo W. & W. R. R. Co. v. Hamilton, 76 Ill., 393; Int. & G. N. R. Co. v. Lewis, Tex. (Civil App.), Oct. 4, 1893; Sec. 196, Constitution of Kentucky; Ray on Negligence of Imposed Duties, pp. 6, 35, 253; 2 Ld. Raym., 918; Forward v.

Pittard, 1 T. R., 27; L. & N. R. R. Co. v. Wynn, 88 Tenn., 320; L. & N. R. R. Co. v. Owen, &c., 14 Ky. R., 118; Baughman v. L., E. & St. L. R. R. Co., 14 Ky. R., 268.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

The appellees, Sanders & Russell, shipped 265 hogs in four live stock cars over defendant's road from Burgin, Ky., to the Cincinnati Stockyards. The train of which these cars formed a part left Burgin on the morning of July 2d at 2:45 a. m., and reached the Cincinnati Stockyards, the point of destination, in the afternoon of that day at 4:15 p. m., having been on the road about thirteen and one-half hours. The hogs were in good condition when they left Burgin. When they arrived at their destination fifteen of them were dead, and the remaining two hundred and fifty had lost in shrinkage, over and above the usual loss of flesh incident to the journey, about seven hundred and fifty pounds whilst en route. On the thirteenth of September, 1902, Sanders & Russell brought this suit against the railroad company seeking to recover $313.95, the pecuniary loss resulting from the shipment to them, which they allege was chargeable to the defendant's negligence in failing to give proper care and attention to the hogs whilst in its custody, and to the unnecessary and unusual delay in delivering them at their point of destination. The answer of the defendant is in two paragraphs. In the first it denied that the plaintiff's loss was attributable to any lack of care or attention on its part to the hogs while in transit, or that the delay in their transportation from Burgin to Cincinnati was unusual or unnecessary. In the second it alleges that the bill of lading under which the hogs were shipped provided that the plaintiffs should unload, feed, water, and attend to the hogs at their own expense and risk whilst in transit; and that the company should not be liable for any injury to them arising from heat, suffocation,

or other ill effects of being crowded in the cars; and that the plaintiffs should send a man along on the freight train to look after them; that the company should not be liable for any injury or loss by reason of delay in transportation not resulting from the negligence of the company, or from any cause whatever beyond its control, and allege that any loss or damage to the hogs was attributable to the negligence of the plaintiffs in failing to look after them as required by the bill of lading, and to suffocation on account of the excessive heat of the weather. There is no allegation that the cars were overloaded, or that the suffocation or injury arose from this fact. A general demurrer was sustained to the second paragraph of the answer, and a jury trial upon the issues raised by the first paragraph resulted in a verdict and judgment for the plaintiff for the amount sued for, and the railway company has appealed.

There is little conflict in the testimony. It was shown that the train reached Lexington at 4:30 a. m., and was delayed at that point 1 hour and 20 minutes; that it was delayed 40 minutes at Williamsburg, and 1 hour at Shearman, reaching Ludlow at 1:39 p. m., and that it took until 4:15 p. m., for it to arrive at the Union Stockyards, the point of destination. The testimony of the plaintiffs is uncontradicted that the usual time required is only about six or seven hours to make the run on this train from Burgin to the stockyards, and that it generally arrives there somewhere between 8 and 10 o'clock in the morning. There is no denial either in the pleading or proof as to the extent of the alleged losses. Nor was there any claim by the railway company that they gave any special attention to the hogs whilst in their possession. It was also shown that neither of the plaintiffs nor any representative of theirs was on the

train, the hogs being consigned to a firm of brokers at the Union Stockyards.

Considerations of public policy have imposed extraordinary liabilities upon carriers. They are generally held liable as insurers of the safety of goods committed to their care, with the exception of, first, those arising from what is known as the act of God; second, those caused by the public enemy; third, those arising from the act of the shipper; fourth, those arising from the inherent nature of the goods shipped. Appellant insists that the losses to appellee resulting from the death and loss of weight in his hogs was attributable to their inherent inability to successfully withstand the hot weather which prevailed during the time of their shipment, and not from any negligence or lack of attention on their part. If this is admitted, yet appellant knew the nature of the stock which they assumed to transport, and that the delays in their trains, however excusable in themselves, increased the risk in carrying the hogs through with safety, and to that extent increased their obligation to give them every attention necessary to avoid loss, and to carry them to their destination without unnecessary or unavoidable delay. While at common law carriers could limit their liability for loss or injury to goods committed to their care resulting from many causes, they were never permitted to contract for exemptions from liability attributable to their own negligence. In 6 Cyc., 392, the rule is laid down as follows: "Where the express language or evident purpose of the stipulation relieving the carrier from common law liability is to exempt him from liability for his own negligence or that of his servants or agent, the stipulation is against public policy, and is therefore void, and of no effect." And by section 196 of the Constitution of Kentucky they are prohibited from contracting for relief from any liability imposed upon

them by common law. The provisions of the bill of lading relied on in the second paragraph of appellant's answer, that appellee should water and attend the stock at their own risk while in transit, and that they should send a man along to look after them, does not relieve the carrier from the duties imposed upon it by law to look after the stock. Their only effect is to shift the burden of proving negligence from the railroad company to the shipper. See Ray's Negligence of Imposed Duties, p. 241; L. & N. R. R. Co. v. Hawley, 10 Ky. Law Rep., 117; C., N. O. & T. P. Ry. Co. v. Grover, 11 Ky. Law Rep., 236. "And the rule as now established by the great weight of modern authority is that railroad companies are common carriers of live stock with substantially the same duties and responsibilities that existed at common law with respect to the carriage of goods, except that they are not liable as insurers against loss and injury resulting from the inherent nature, propensities, or proper vices of the animals themselves." See 4 Elliott on Railroads, 1545; Ray on Negligence of Imposed Duties, 253. We therefore conclude that the demurrer to the second paragraph of appellant's answer was properly sustained.

The extraordinary delay in transporting the hogs is not satisfactorily accounted for, and the court in this case made the liability of the appellant depend upon the question of their negligence, and the jury have found a verdict for the appellee. We perceive no grounds for disturbing it.

Judgment affirmed.