## Baltimore & Ohio Southwestern Railroad Co. v. Clift.

(Decided March 3, 1911.)

### Appeal from Mason Circuit Court.

Railroads—Shipping Cattle—Mixed and Unclassified Negligence—Liability of Appellant for Injury.—The Louisville & Nashville R. R. Co. contracted for itself to carry a car load of cattle over its own line to Cincinnati and there deliver them to the B. & O. S. W. R. R. Co., and at the same time contracted as agent for the B. & O. S. W. R. R. Co. that it would, after receiving the cattle at Cincinnati, carry them safely to Baltimore. Held, under such a contract the appellant B. & O. S. W. R. R. Co. would be no more liable for any negligence in handling the cattle in the stock yards at Cincinnati in the absence of proof that it controlled the stock yards or that the cattle were reloaded there by its agents, than it would be for the negligent handling of them by the L. & N. R. R. Co., before they reached Cincinnati, or before they started from Maysville. Nor can any liability of appellant B. & O. S. W. R. R. Co. be predicated on the fact that it received the cattle in a mixed condition and carried them to Baltimore without grading and classifying them, for it would not be presumed to know that they had been mixed, or that they were not loaded on the cars at Cincinnati as they were by appellee himself at Maysville, Kentucky.

WORTHINGTON, COCHRAN & BROWNING for appellant.

ALLAN D. COLE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellee recovered a verdict and judgment for $247.88, damages against appellant in the court below. The claim for damages grew out of the alleged violation by appellant of a contract it made with appellee to ship in 1905 over its railroad from Cincinnati, Ohio, to Baltimore, Maryland, 70 head or four car loads of cattle received of the Louisville & Nashville Railroad Company at

Cincinnati, after they had been carried by the latter company over its road from Maysville, Kentucky, to that city. The shipment was made before the enactment by Congress of the Carmack law.

It was alleged in the petition as amended that the cattle in question were what is known as export cattle; that they were bought by appellee as agent for Meyer & Housman, of Baltimore, under a contract which provided that he was to buy and ship the cattle, graded and classified, consigned to himself at Baltimore; and if upon their arrival at the point of destination Meyer & Housman found the cattle properly graded and classified as required by the contract, they were to receive them, repay appellee their cost price, including freight, and in addition, pay him a commission of 75 cents per head for his services in purchasing and shipping them; but, the contract further provided that if, from any cause, the cattle upon reaching Baltimore were found by Meyer & Housman to be mixed and unclassified, then and in that event they were not to receive them as purchasers, but as commission merchants, and to sell them on the market as the property of appellee and to account to him for the proceeds, less the commission which they would retain.

The petition contains the further averments that the cattle were carried by the Louisville & Nashville Railroad, as graded, classified and loaded on the cars by appellee, from Maysville to Cincinnati and there delivered to appellant, whose servants at Cincinnati in reloading them on its cars at the Union Stock Yards there failed to grade and classify them, and that in that condition appellant carried and delivered them to Meyer & Housman at Baltimore, who, by reason of their mixed and unclassified condition, refused to receive them as purchasers under their contract with appellee, but instead received them as commission merchants, and as such sold them on the Baltimore market and accounted to appellee for the proceeds, less the freight and their commission; that the market being somewhat off at that time, the appellee sustained a loss upon the cattle of $247.77, the amount sued for.

Appellee first sued the Louisville & Nashville Railroad Company, but later an amended petition was filed, which made appellant a defendant and sought a recovery against it, as well as the Louisville & Nashville Railroad Company. Thereafter the action was dis-

missed by appellee as to the Louisville & Nashville Railroad Company and prosecuted against appellant alone.

Appellant's answer traversed the averments of the petition, which completed the issues.

Appellant contends that it should have been granted a new trial by the circuit court and that the judgment appealed from should be reversed, because of error committed by that court in instructing the jury and in refusing to grant a peremptory instruction compelling a verdict in its favor; there being, as claimed, no evidence to support the verdict.

The printed contract under which appellant agreed to ship and deliver the cattle is silent as to the manner in which they were to be graded and classified by appellee when loaded on the cars at Maysville; nor does it provide that they were to be delivered by appellant at Baltimore in the precise manner in which they were graded and shipped by him. That they were to be carried by appellant to the point of destination without injury to them was specified in the contract; and as a matter of law a carrier of live stock becomes an insurer of its safe delivery, except where injury or loss results from the act of God, or the public enemy, or from the inherent nature, propensities or viciousness of the animals. Louisville & Nashville R. Co. v. Pedigo, 129 Ky., 661; Stiles, Gaddie & Stiles v. L. & N. R. R. Co., 129 Ky., 175; C., N. O. & T. P. Ry. Co. v. Sanders & Russell, 118 Ky., 115. But if appellee had intended to charge the carrier with the duty of carrying and delivering the stock graded and classified in the manner in which he loaded them on the cars, he should have required such a stipulation to be put in the contract, and it is not alleged in the petition that it was by fraud or mistake omitted from the contract. In the absence from the contract of such a provision, we do not see upon what ground appellant or the Louisville & Nashville Railroad Company could have been expected or required, in transporting, reloading and delivering the cattle to maintain the grading and classification of them made by appellee in loading them at Maysville.

If, however, it can be said that proof that appellant undertook to carry and deliver the cattle as graded and classified by appellee was admissible, the evidence as a whole failed to show that the mixing and unclassifying of the cattle were not done before they were received by

appellant at Cincinnati. The Louisville & Nashville Railroad Company was the initial or first carrier; its agent at Maysville made the contract with appellee under which the cattle were to be shipped, and while by the terms of the contract the shipment of the cattle from Cincinnati to Baltimore was to be made over appellant's line of railroad, it devolved upon appellee to show that the mixing and unclassifying of the cattle was done by appellant's agents at Cincinnati or before their delivery at Baltimore. In Illinois Central R. Co. v. Curry, 127 Ky., 643, we held that in the case of a shipment like the one under consideration:

"Each connecting carrier to the point or destination receiving the freight will be considered as having constituted and appointed the initial carrier its agent for the purpose of entering into the contract of shipment, and will be liable upon the contract made with the initial carrier the same as if it had been made directly with it."

But, we also held in the same case, that where the action was brought against the several carriers for injuries to live stock, none of the connecting carriers would be responsible for damages occurring on a line not controlled by it, in the absence of a special contract to that effect.

In the instant case the evidence shows that the stock was delivered by the Louisville & Nashville Railroad Company at the Union Stock Yards in the city of Cincinnati, but it does not appear from the proof whether the Union Stock Yards is owned either by the Louisville & Nashville Railroad Company or the appellant, or whether it was an independent corporation. If it was owned and operated by the appellant, the persons in charge of it who reloaded the cattle upon appellant's cars would be treated as the latter's agents; and if so, and the cattle were mixed by them in reloading and such mixing of them constituted a violation of the shipping contract, it could justly be charged that appellant would be liable for their negligence in the manner of loading. Appellee's evidence shows that the mixing of the cattle was done in reloading them at the Cincinnati stock yards, but it wholly fails to show that appellant owned or controlled the stock yards, or that the persons who loaded the cattle upon its cars were its agents.

It is true that appellee testified that one Wilmoth, of Paris, Kentucky, claiming to be the agent of appellant,

approached him after the shipment of the cattle on the subject of the loss he had sustained, and with a view of making some settlement of it with him; but he had only the statement of Wilmoth that he was appellant's agent, and the testimony was properly excluded by the court upon the ground that the agency could not be established by the mere declarations of the person claiming to be the agent. It is further true, that appellee also testified that Wilmoth at the time had in his possession some papers, but he did not explain the character of the papers or testify that they referred to the loss he sustained on the shipment of the cattle. Appellee also testified that persons in charge of the Cincinnati stock yards told him that the cattle were mixed in reloading them upon appellant's cars at Cincinnati, but it was not made to appear that the persons from whom he obtained this information were the agents of appellant, and, therefore, appellee's testimony as to what was said to him by them was also properly excluded by the court.

It is apparent, therefore, that appellee did not establish by the evidence the fact that the cattle were mixed by appellant or its servants after their delivery to it by the Louisville & Nashville Railroad Company, and the failure to establish this important fact entitled appellant to the peremptory instruction asked at the conclusion of the evidence. It is, however, argued by counsel for appellee that the burden was upon appellant to show that the mixing of the cattle was done before its delivery to it. There would be some force in this argument but for the fact that the petition, as amended, distinctly alleged that the mixing was done, not on appellant's line of railroad, but at the stock yards at Cincinnati; and we can not presume that appellant owns these stock yards or has any control over them.

As we view the matter, the Louisville & Nashville Railroad Company contracted, for itself, to carry appellee's cattle over its own line to Cincinnati, and there deliver them to appellant; and at the same time contracted as agent for appellant, that it would after receiving the cattle at Cincinnati carry them safely to Baltimore. Under such a contract appellant would no more be liable for any negligence in handling the cattle in the stock yards at Cincinnati, in the absence of proof showing that it controlled the stock yards, or that the cattle were reloaded there by its agents, than it would be for the neg-

ligent handling of them by the Louisville & Nashville Railroad Company before they reached Cincinnati, or before they started from Maysville. Nor can any liability of appellant be predicated on the fact that it received the cattle in that mixed condition and carried them to Baltimore without grading and classifying them, for it would not be presumed to know that they had been mixed or that they were not loaded on its cars at Cincinnati as they were by appellee himself at Maysville.

If appellee's theory of the case had been supported by the pleadings and proof, the instructions given by the court would have been substantially correct, but as only a peremptory instruction directing the jury to find for the appellant would have been proper, those used on the trial should not have been given.

For the reasons indicated the judgment is reversed and cause remanded for a new trial and other proceedings consistent with this opinion.