## L. & N. R. R. Co. v. Cecil.

(Decided November 3, 1911.)

### Appeal from Marion Circuit Court.

1. Carrier of Live Stock—Delay.—A carrier of live stock is bound to respect and yield to the authority of the federal statute, which prohibits it from keeping live stock on its cars for a greater period than 28 hours without stopping at least five hours for feed and water, and a State law which prohibits the running of freight trains on Sunday; and any delay caused by an obedience to these statutes is a necessary incident to the prudent and proper management of the carrier's business, for which it is not liable.

2. Same—Negligence.—Where mules are received in good order, and are delivered at their destination in a bruised and injured condition, the burden is upon the shipper to show, by affirmative evidence that the injury to his mules was due to the negligence of the carrier; it is not to be left to a mere guess as to how the injuries were brought about.

WILLIAM C. McCHORD, WILLIAM W. SPALDING, CHARLES H. MOORMAN and BENJAMIN D. WARFIELD for appellant.

HUGH P. COOPER for appellee.

Opinion of the Court by Judge Miller—Reversing.

On Friday, January 1st, 1909, the appellee Cecil shipped 59 mules from St. Mary's, in Marion County, Kentucky, to Atlanta, Georgia, over the appellant's railroad. The mules were shipped in two cars, one containing 30 mules and the other 29. They left St. Mary's at 11 o'clock in the forenoon, and arrived at Knoxville at 6 o'clock the next morning, where they were unloaded and placed in covered stock pens, fed and watered, and allowed to rest until Sunday night at 9 o'clock, when they were reloaded and started for Atlanta. When they reached Atlanta on Monday morning at 11 o'clock, one mule was sick with pneumonia, two or three were down upon the floor of the car, and five or six were injured and bruised about the eyes, legs and bodies. The mule that was sick with pneumonia died within a few days, and the injured mules were sold at a reduced price. The mule that died was worth $225.00, while the other five or six mules, which were worth an equal amount, were sold for perhaps half that sum. Appellee sued the appellant company for $675.00 damages, for negligence in handling the mules, and for the delay in transporting them. He recovered a verdict for $550.00, and from a judgment based on that verdict appellant prosecuted this appeal.

We will first dispose of the charge of delay in the transportation of the mules. The run from St. Mary's to Knoxville covered a distance of 215 miles, and was made in 19 hours; while the run from Knoxville to Atlanta, a distance of 197 miles, was covered in 14 hours. The total distance of 412 miles was thus covered in 33 hours of traveling time. The federal statute prohibits an interstate commerce carrier from keeping live stock of this character on cars for a longer period than 28 hours without stopping at least five hours for feed and water. It is apparent, therefore, that appellant could not have run through from St. Mary's to Atlanta within the limited time of 28 hours. Moreover, the Georgia Sunday law prohibited the running of trains carrying live stock on the Sabbath, unless the train had been delayed beyond the schedule time, in which event it was not required to lay over on the line of the road on Sunday, but might run on to the point where, by due course of shipment or consignment, the next stock pen on the route might be, where such animals might be fed and watered. It was not only necessary, therefore, to break the trip at some point in order to avoid the penalties of the 28 hour

law, but it was further necessary to avoid running in the State of Georgia on Sunday. The delay at Knoxville was therefore a necessary incident to the prudent and proper management of appellant's business as the carrier of appellee's mules. Southern Railway Co. v. Railey, 26 Ky. L. R., 55, 80 S. W., 787. Moreover, the carrier was bound, under the law, to respect and yield to the requirements of the federal statutes, and of the law of Georgia. Savannah R. R. Co. v. Wilcox, 48 Ga., 437. These two difficulties could have been met only in the way that appellant managed the shipment in this case, since by leaving Knoxville at 9 o'clock on Sunday night the train did not reach Georgia territory before Monday morning. Moreover, no damage has been shown by reason of this delay. There is no claim that there was a decline in the mule market at Atlanta at any time, and it has not been shown that the mules were at all injured by the stopover at Knoxville. On the contrary, the evidence tends to show that they were benefitted by that break in the trip. They were well cared for in covered sheds, with running water, and were well fed. Under these conditions it is but natural to conclude that the mules were not injured by the delay in Knoxville, but were rested; and for that reason should have been in an improved condition upon their arrival at Atlanta.

2. The mules were in good condition when they were received by the appellant at St. Mary's. They had been wintered in the neighborhood, and had been collected from the adjoining farms immediately before their shipment on January 1st. Most of them were only a short distance from the station; one had been driven two and a half miles, and another—the one that subsequently died—had been driven six miles to the station, the day they were shipped. There is no evidence whatever that appellant's agents or servants were guilty of negligence in the handling of the mules upon the trip. There is nothing to show that there was any unusual jerking or rough handling of the cars, or mistreatment of the mules in any way. On the contrary, appellant has shown by its several conductors who handled these two cars upon the various sections of the road, that the cars and mules were inspected from time to time and at regular intervals; that the cars were sound and in good condition, and that nothing wrong was seen until the two cars had reached the outskirts of Atlanta, when two or three of the mules in one of the cars were found to be down upon the floor of

the car. The cars were moved with all possible dispatch to the stock yards where the mules were promptly unloaded. Furthermore, the mules that were down were all in one end of one car; and from this, appellant contends that their condition was brought about by some inherent viciousness upon the part of the animals. The sum and substance of the evidence is, that the mules were all sound and in good condition when they were received by appellant at St. Mary's, and some five or six of them were bruised and injured when they were delivered at Atlanta. There is evidence to the effect that when a mule is driven any considerable distance for shipment after having been housed through the winter, it is liable to become heated and excited by the drive and the new experience of the train and new associates, and that the subsequent traveling in an open car frequently results in pneumonia. Appellee bases his right to recover upon the theory that it having been shown that the mules were sound when shipped, and that they had been injured in transit, the burden of showing that the injury was the result of inherent weakness or viciousness of the mules, and not the result of the negligence of the appellant, was upon the appellant. But, clearly this is not the law in this State upon that subject.

L. & N. R. R. Co. v. Warfield, 30 Ky. L. R., 352, is quite similar to this case in its controlling facts; and in that opinion, we said:

"In the case at bar, there is an utter failure of evidence from which the jury could fairly and reasonably conclude that the pneumonia from which the mules died was the result of the company's negligence. The burden was upon the plaintiff to show that the death of his mules was due to the negligence—some negligence, at least—of the defendant company. Plaintiff in his proof failed to make this showing, and the defendant, upon being required to introduce its testimony, showed conclusively that while the mules were in its charge they were handled with due care, and received that degree of care and attention in transit which a reasonably prudent person would give them under similar circumstances. The defendant further proved that none of the mules were permitted to eat or drink poison while in its care and custody.

Under this proof the trial court should, at the close of the testimony, have given the jury a peremptory instruction to find for the defendant."

The rule of law governing cases of this character was laid down in Cincinnati, N. O. & T. P. Ry. Co. v. Sanders, 118 Ky., 120, in the following language:

"The rule as now established by the great weight of modern authority is that railroad companies are common carriers of live stock with substantially the same duties and responsibilities that existed at common law with respect to the carriage of goods, except that they are not liable as insurers against loss and injury resulting from the inherent nature, propensities, or proper vices of the animals themselves."

After quoting the above language, with approval, in Louisville & Nashville Railroad Co. v. Pedigo, 129 Ky., 666, we said:

"So, in Kentucky the rule is, as at the common law, that a railroad company or other common carrier undertaking to transport live stock becomes an insurer of its safe delivery, except where injury to or the loss of such live stock results from the act of God or the public enemy, or from the inherent nature, propensities, or viciousness of the animals themselves."

We think the facts of this case bring it squarely within the scope of the decision in L. & N. R. R. Co. v. Wathen, 22 Ky. L. R., 85, where we said:

"From the testimony of the plaintiffs a jury could not, by any fair reasoning, conclude that the pneumonia was produced by the negligence of the defendant. It is no more reasonable to conclude that it was from an injury which the horses may have received by the alleged rough handling of the car, than by the exposure which resulted from transferring them from warm stables and transporting them in the car. From the testimony offered by them the jury could do nothing more than guess as to what produced the pneumonia, and the defendant's rights should not be guessed away for one upon whom the burden rests to establish a cause of action against it."

We have precisely the same state of facts here. In short, the law requires the plaintiff to make out his case by competent evidence, and there is no evidence here to show that the death of the mule that died from pneumonia, or that the injuries to the other mules, were caused by any act of negligence upon the part of the appellant. The burden was upon appellee to show the negligence of the appellant by affirmative evidence; it must not be left to a mere guess as to how the injuries were

brought about. Hurt v. L. &. N. R. R. Co., 116 Ky., 545; Louisville Gas Co. v. Kauffman, 105 Ky., 131.

The appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed for a new trial.