## Chesapeake & Ohio Railway Company v. Magowan.

(Decided March 7, 1912.)

### Appeal from Montgomery Circuit Court.

1.   Railroads—Injury to Stock—Action for Damages.—In an action for damages against a railroad for injury to a horse alleged to

have been caused by negligence in operating the train, evidence examined, and held sufficient to support a verdict in favor of the plaintiff.

2. Same—Estoppel.—Where the carrier pleads that the shipper is estopped to recover any sum in excess of that stated in the bill of lading on the ground that he fraudulently represented the value of the horse for the purpose of obtaining a lower freight rate, it is the rule that although the carrier may not know the exact value of the horse, yet if it knows that it is worth more than the value stated by the shipper, no estoppel will arise in its favor.

SHELBY & SHELBY and LEWIS APPERSON for appellant.

R. A. CHILES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On September 7, 1908, appellee, James R. Magowan, shipped over the line of appellant railroad company, some horses from Mt. Sterling to Lexington, Ky. Among them was a yearling called "Mendosa Worthy." Charging that said filly was delivered to the railroad company in sound condition and that she was injured by the carelessness of its agents and servants in operating the train, appellee brought this action to recover damages in the sum of $1,999.50. The railroad company, after denying negligence, pleaded that appellee fraudulently represented the value of the filly as $100; that the charge for the shipment upon this valuation was only $4.80, whereas if appellee had correctly represented the value of the filly at $10,000, as claimed by him, the freight rate would have been $154, and because of its fact it is alleged that appellee was estopped to claim any value in excess of $100 or to recover any sum in excess of that amount. A trial before a jury resulted in a verdict and judgment in favor of appellee for the sum of $1,037, with interest from September 7, 1908, and the railroad company appeals.

The evidence for appellee is to the effect that the filly was worth from five to ten thousand dollars; that she was delivered to the railroad company in sound condition; that upon reaching Lexington she was suffering from two curbs on her legs. Two veterinary surgeons testified that in their opinion the curbs were due to strike injuries, and that the injuries were such that

they could not be cured. The filly's market value in her injured condition upon arriving at Lexington, was fixed at $250 or $300.

As to the manner in which the injuries occurred, appellee testified that the filly was loaded on the stock pen track at Mt. Sterling along with other horses which were placed into two cars; that the cars were then placed on the storage track where a freight train coming from the east shunted some cars against them and threw the horses down. Appellee remarked to the conductor at the time that he had some very valuable stock in the cars and that he wished he would be careful in handling the cars. A negro boy and one other witness corroborated appellee as to the violence with which the cars were switched against those containing the horses. For appellant, several trainmen testified that when the train arrived the engine proceeded to the storage track, coupled onto the cars without any violence of any kind, carefully removed them to the main track and attached them to the train going to Lexington. There was a man in charge of each of the cars containing the horses, but neither of them was produced as a witness.

For appellant, it is insisted that the verdict is flagrantly against the evidence. In this connection it is argued that appellee and his witnesses differed as to the manner in which the cars that struck the cars containing the horses were switched, and that their statements are so at variance with the ordinary method of railroading as to be unworthy of belief. While it may be that the witnesses differ as to the exact manner in which the cars were switched, there is an agreement between them as to the main fact, that is, that the cars containing the horses were violently struck by other cars. It was for the jury to say under all the facts of the case whether they believed the statements of appellee and his witnesses or the statements of appellant's witnesses, and we cannot say that the finding of the jury is flagrantly against the evidence.

The Common Law rule prevails in Kentucky that railroad companies and other common carriers undertaking to transport live stock become an insurer of its safe delivery, except where injury to or the loss of such live stock results from the act of God or the public enemy, or from the inherent nature, propensities, or

viciousness of the animals themselves.   (L. & N. R. R.
Co., vs. Cecil, 145 Ky., 271; 140 S. W., 186.)

While the filly was young and likely to become ex-
cited by the approach of the train, we cannot say that
this fact is sufficient to overcome the positive evidence of
appellee to the effect that the car in which the filly was
loaded was violently struck and the filly thrown down.

Upon the question of fraudulent representation of
the value of the filly, the young man who prepared the
bill of lading stated that appellee fixed the value of the
horses.   On the contrary, appellee testified that he did
not fix their value, but that the young man who had
heard that one of appellee's horses had won a $10,000.00
stake, asked appellee if he had any other horses in the
cars as good as she was, and appellee said yes, "I have
one that I paid $835.00 for."   The young man thought
that was a big price.   Appellee also told him that he
had a filly he paid $275.00 for, which he considered the
best in the lot.   If appellee's statements be true, direct
knowledge was brought home to the railroad company
that he was shipping race horses that they were of value
greatly in excess of $100.00.   It is the rule that although
the carrier may not know the exact value of the horse,
still if it knows that it is worth more than the value
stated by the shipper, no estoppel will raise in its favor.
In the case of Southern Express Co. vs. Fox & Logan,
131 Ky., 257, the court, in discussing this precise ques-
tion, said:

"If the carrier in the case at bar was not deceived
as to the value of the horses, if he knew that they were
worth more than $75.00, and yet took them to carry at
the low rate, to permit him to avoid his common-law
liability by pleading the contract would be in effect to
treat the contract as valid.   Although the carrier did
not know the actual value of the horses, still, if he in
fact knew that they were worth more than $75.00, it
cannot be said that he was deceived by the statement of
the shipper, and no estoppel would in that event arise in
his favor: for an estoppel never arises where the party
pleading the estoppel knew the statement to be untrue.
The answer in the case at bar does show that the carrier
relied upon the statement of the shipper, and that it did
not know the actual value of the animals; that the state-
ment was made for the purpose of influencing its con-
duct and was fraudulently made for that purpose.   But

it does not show that the carrier did not know that the animals were of more value than $75, or that it was deceived or misled as to the value of the animals by the statement which the shipper made. An estoppel must be pleaded strictly. If a carrier, where he knows the property is worth more, may carry it at a reduced rate in consideration of a low valuation by the owner, and thus escape liability beyond the value, so fixed, the constitutional provision might in all cases be evaded. This is not the case of a sealed package or closed box. It was a shipment of 16 race horses. Race horses are not ordinarily sold at $75.00 each. A man might not know the actual value of a race horse, and yet very well know that it is worth over $75.00.''

In this case the question whether or not appellee, knowing the value of said filly, fraudulently stated that the filly was of the value of $100.00 for the purpose of obtaining a low freight rate, and whether or not appellant was thus deceived and misled into accepting said filly for transportation at said value, was submitted to the jury by an instruction not complained of, and, in our opinion, the finding of the jury upon this proposition is supported by the evidence and the circumstances attending the transaction.

Judgment affirmed.