THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. SAMUEL WATSON.

No. 14,172.    (81 Pac. 499.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Shipment of Cattle—Implied Authority of Agent.* The fact that a person is in the immediate charge of cattle at the time they are delivered to a carrier, and while they are in transit, is not conclusive evidence that he is authorized to sign the owner's name to a contract of shipment, nor is the carrier justified in assuming that he has such authority, where an oral contract for the shipment has already been made with the owner.

2. ——— *Negligent Delay—Damages—Evidence.* Where damages are claimed from a carrier on account of weight unnecessarily lost by cattle in transit, occasioned by a negligent delay, and the exact weight at the beginning and at the end of the journey cannot be shown, it is not error to permit persons experienced in such matters to give their opinion of the loss ordinarily resulting under such circumstances, as well as of the loss in similar cases where no delay occurs.

Error from Cloud district court; HUGH ALEXANDER, judge. Opinion filed July 7, 1905. Affirmed.

*A. A. Hurd, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*Park B. Pulsifer,* and *Dwight M. Smith,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Samuel Watson sued the Atchison, Topeka & Santa Fe Railway Company for damages occasioned by its failure to deliver within the time agreed upon by special contract several cars of cattle shipped by him. He recovered a judgment, from which the company prosecutes error. According to plaintiff's evidence, he personally made an oral contract with the general live-stock agent of the company by which it was agreed that cars were to be provided for receiving the cattle at Miltonvale on the morning of the next day, and that they were to reach Kansas City before seven o'clock that evening; the cattle were loaded on time but the company failed to get them to Kansas City before midnight, thereby missing a connection and occasioning substantially a day's delay in their arrival at St. Louis. It was shown that a son of the plaintiff accompanied the cattle, and at the time they were loaded upon the cars signed his father's name to a printed contract purporting to be that under which the shipment was made, and to supersede any prior agreement. The terms of this written contract precluded a recovery if the son executed it under such circumstances as to bind the plaintiff. The court submitted to the jury the question whether the son was the agent of the father for that purpose, and the jury by their general verdict found that he was not. The defendant contends that under the admitted facts the son was the father's agent for that purpose, or at all events the company was justified in so treating him, and that the court should have so instructed.

The plaintiff testified that he had his son accompany the cattle in order that he might obtain a pass to Kan-

sas City; that he knew that it was customary for persons in charge of stock in shipment to sign contracts of some kind upon which they were passed, and that he supposed that his son would sign one of these contracts. He did not, however, say that he knew the substance or effect of the contracts usually signed or that he understood that his son would sign a contract under which the cattle were to be carried. His statements in this regard, with other circumstances, were proper to go to the jury for the bearing they might have upon the question of his son's agency, but they did not conclusively establish that his son was authorized to execute the contracts in his behalf.

The plaintiff in error invokes the doctrines that authority to make a shipment carries with it authority to make a contract for that purpose, and that a carrier is not bound to examine the authority of the person presenting goods for transportation to make such a contract. Neither principle applies to the facts of this case. The plaintiff's son was not shown to have been authorized to make the shipment in the sense that he had any responsibility whatever as to its terms or conditions. The evidence was entirely consistent with the idea that he was merely accompanying the cattle to assist in handling them, and that he was charged with no further duty than to see that they were at the place of shipment at the time agreed upon by his father and the company's live-stock agent. While it may be true, as a general rule, that a carrier is justified in assuming that a person presenting goods for shipment is their owner or one having authority from their owner to make all necessary arrangements regarding their transportation, including the signing of contracts of carriage, there is no room for the operation of such rule where, as in this case, the carrier had already made a contract to receive, transport and deliver the very property involved.

One element of damage for which recovery was

allowed was the loss in weight which it was found the cattle suffered by reason of the delay. The plaintiff was permitted to show by the testimony of persons familiar with the business of shipping such cattle what the ordinary shrinkage would be where such a shipment was accomplished within the time stipulated in this case, and what it would be where such a delay occurred as that here shown, the difference being the loss for which it was sought to hold the defendant liable. No serious objection is or can be made to the method adopted to establish the amount of shrinkage necessarily resulting from such a journey when diligently made. In the nature of things this could only be shown by opinion evidence—the judgment of persons possessed of special information in such matters, and qualified by their experience to testify regarding them. But the defendant complains that the amount the cattle actually did shrink was susceptible of proof by more direct evidence, and that therefore it was error to permit recourse to expert testimony on this point. This objection might be regarded as well taken if it could be said that the actual shrinkage could have been proved definitely and positively, without resort to evidence of that character; but that does not appear to be the case.

Although the cattle were weighed on their arrival in St. Louis, there is no basis presented under the evidence for determining their exact weight at the time they were loaded upon the cars at Miltonvale. Estimates made by persons who saw the cattle before shipment would depend for their value in a large degree upon the experience of the observers. Such evidence would not necessarily be much more convincing than that to which objection is made. A conclusion regarding the loss based upon a comparison of the actual weight of the cattle at the end of the journey with their estimated weight at its beginning would not be so decisive that it might not be affected

by the evidence of competent witnesses concerning the shrinkage ordinarily resulting from a similar trip. Under the circumstances presented the evidence objected to was admissible. (*Enlow v. Hawkins, ante,* p. 633; *Sexton v. Lamb,* 27 Kan. 426; *Missouri K. & T. Ry. Co. v. Truskett,* 104 Fed. 728, 44 C. C. A. 179; *Cooke v. The K. C. Ft. S. & M. R'y Co.,* 57 Mo. App. 471.)

The judgment is affirmed.

All the Justices concurring.