## *ST. LOUIS & S. F. R. CO. v. SHEPARD.

### No. 2978.   Opinion Filed December 9, 1913.

### Rehearing Denied April 7, 1914.

### (139 Pac. 833.)

1. **CARRIERS—Delay in Transporting Stock—Negligence—Burden of Proof.** If in a common-law action to recover damages for the breach of a shipping contract, whereby defendant undertook to safely transport certain cattle within a reasonable time, it is shown that defendant failed to deliver the same in a safe condition within a reasonable time, a presumption of negligence arises, and the onus is upon the defendant to excuse itself from negligence.

2. **SAME—Sufficiency of Evidence.** Evidence examined, and, applying the rule, held, that the same was sufficient to take the question of negligence to the jury.

3. **SAME—Defense to Delay.** Where in a common-law action to recover damages for the breach of a shipping contract, whereby defendant undertook to transport certain cattle within a reasonable time, the evidence reasonably tends to show that defendant breached its contract by failing so to do, the same is sufficient to take the question of negligence to the jury, and the presumption of negligence is not explained or rebutted by positive evi-

St. Louis & S. F. R. Co. v. Shepard.

dence on behalf of the defendant that the regular schedule of its stock trains would not enable it to deliver the cattle within a reasonable time.

4. **APPEAL AND ERROR**—Requisites of Brief—Instructions. Where defendant fails to comply with rule 25 (38 Okla. x), and set forth the instruction complained of in totidem verbis, the alleged error in giving the instruction will not be considered.

5. **EVIDENCE**—Expert Testimony—Admissibility. Where a witness qualifies as an expert in the handling of cattle, his opinion that certain treatment within the issues contributed to the depreciation of the cattle is competent evidence.

(Syllabus by the Court.)

*Error from County Court, Murray County;*
*Harry W. Fielding, Judge.*

Action by H. B. Shepard against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*J. B. Thompson,* for defendant in error.

TURNER, J. This is a common-law action to recover damages for the failure to deliver, within a reasonable time, certain live stock which plaintiff had delivered to defendant, a common carrier, to be transported for hire from Ft. Worth, Tex., to Kansas City, Mo.; the alleged injury growing out of the shrinkage of the cattle and a decline of the market. After the fourth paragraph of the petition had been eliminated by demurrer, defendant answered, and set up two special contracts, and pleaded certain alleged exemptions therein contained to defeat the action. There was trial to a jury, and judgment for plaintiff, and defendant brings the case here.

As the plaintiff's right to recover depends upon his ability to show negligent delay on the part of the carrier, and as we need not cite authorities in support of the proposition that none of the provisions of the contract limiting the common-law liability of the carrier are available as a defense against its negligence, we lay the contracts out of the case.

It is first assigned that the court erred in overruling the demurrer thereto at the close of plaintiff's evidence. The contention is that the evidence was insufficient to take the question of negligence to the jury. There is no dispute as to the facts. The evidence discloses that on May 13, 1909, plaintiff, at Ft. Worth, Tex., notified defendant that he had six cars of cattle ready to ship over its road to Kansas City; that, pursuant thereto, defendant furnished cars, and the cattle were loaded at 5:45 that afternoon, and left Ft. Worth for their destination at 7:35 p. m., after a delay of 1 hour and 50 minutes. They arrived at Sherman, Tex., at 3:15 a. m. the following morning, and, after a delay of 1 hour and 50 minutes, occasioned by the defendant's dispatcher erroneously reporting the arriving time of the train, in consequence of which defendant failed to call the train crew until after the train arrived in Sherman, they left Sherman at 5:05 a. m., arriving at Denison at 5:40 a. m. and at Francis at 11:10 a. m. There were three stops between Denison and Francis, aggregating a delay of 1 hour and 10 minutes, exclusive of which the train averaged a little over twenty miles per hour. They left Francis at 11:45 a. m., after a delay of 35 minutes, for Sapulpa. Between those points there was an unexplained stop of 38 minutes at Weleetka, 50 minutes at Okmulgee, and another at Hamilton Switch. They arrived at Sapulpa at 5:50 p. m., consuming 6 hours and 5 minutes from Francis to Sapulpa, a distance of 101 miles, making an average of about seventeen miles per hour straight running time, or, deducting the stops, an average of about 22 miles per hour. After a delay of 30 minutes at Sapulpa, the train left at 6:20 p. m. for Afton, a distance of 90 miles, arriving there at 11 p. m., making 29 hours and 15 minutes that the cattle were on the cars. There they were unloaded at about 1 o'clock the morning of the 15th and placed in a pen 80x120 feet, with a mud hole in the middle of it, located on the main street of the town, where people continually passed, causing the cattle to run back and forth through the mud hole, and where they were so crowded they could not lie down. At 7 o'clock that evening they were again loaded and permitted to stand in the cars until 9:30 p. m. before the train pulled out for Kansas City,

where they arrived at 3:15 p. m., May 16th, the transit consuming 68 hours. The record further discloses that the plaintiff in writing had requested defendant to extend the 28-hour period for the cattle to be on the car without unloading to 36 hours, and that 36 hours was a reasonable time in which to transport them from the starting point to their destination. The cost of their feed at Afton was $21, which plaintiff paid. The cattle were sold on the market Monday, May 17th, 40 cents lower than was the market on which they would have been sold had they arrived within a reasonable time.

The undisputed facts disclosing, as they do, that 36 hours was was a reasonable time in which to deliver the cattle at their destination, and that 68 hours was consumed in the transit, the delay was apparently unreasonable, and hence there was no error in the court holding, as it did, in effect, that the evidence was sufficient to make a *prima facie* case for plaintiff, and to take the question of negligence to the jury.

In *St. L. & S. F. R. Co. v. Perry, ante,* 138 Pac. 1027, in the syllabus we said:

"If in a common-law action to recover damages for the breach of a shipping contract, whereby defendant undertook to safely transport certain cattle, it is shown that defendant failed to deliver the same in a safe condition within a reasonable time, a presumption of negligence arises, and the onus is upon the defendant to excuse itself from negligence."

And this, too, whether the shipping contract was in writing or not. See, also, *Bosley v. Baltimore, etc., R. Co.,* 54 W. Va. 563, 46 S. E. 615, 66 L. R. A. 871, where the court, quoting approvingly from Elliott on Railroads, vol. 4, sec. 1483, says:

"There is no fixed rule of law determining what will or will not constitute an unreasonable delay in all cases. The carrier is in all instances bound to use ordinary care and diligence to avoid unreasonable delay, but many elements must be taken into consideration in determining whether there was or was not unreasonable delay in the particular instance. The fact that there was unusual delay does not always show a breach of duty. * * * Where the delay is an unusual one, and is not explained, it is held to be *prima facie* evidence of negligence, but that in case

where there is only a slight delay the rule is different"
—and in the same opinion:

"Is the judgment right upon the evidence? Did the defendant deliver the cattle at the place of destination safely, and within a reasonable time? An unusual delay in their delivery having been proved, it devolves upon the defendant to show that the delay was from a cause for which it was not responsible."

*McMillan v. Chicago, etc., Ry. Co. et al.,* 147 Iowa, 596, 124 N. W. 1069, was an action to recover damages for negligence in the transportation of a horse, resulting in the death of the animal. The facts were that plaintiff shipped a car load of horses from the fair at Des Moines, Iowa, to be exhibited at the Minnesota State Fair at Hamline. They were shipped under a written contract with the C., R. I. & P. Ry. Co., for the transportation over its lines to Minneapolis and delivery of the car there to the proper connecting company; the liability of said company being limited to its own line. After the car reached Minneapolis, it was without delay taken from that company by the Minnesota Transfer Company for the purpose of being switched to the connecting track of the latter company with the other defendant, the Great Northern Railway Company, by which it was to be conveyed to the proper place for unloading at the State Fair grounds at Hamline. The proper agent of the Great Northern Company was notified by the agent of the transfer company, in due time, that certain cars, including the car containing the horses, were ready to be taken by the Great Northern Company from the transfer track to the fair grounds, and some of the cars were so taken, but the car containing plaintiff's horses was not removed from the transfer track until the afternoon, and did not reach the unloading place until 3:30 o'clock that afternoon. By reason of the delay, plaintiff's horses were chilled, and the horse in controversy died. On appeal the Supreme Court held that the verdict directed for the Rock Island Company should stand, but reversed the case as to the Great Northern Company, and, in effect, held that there was sufficient evidence of negligence as to the liability of that company to take the case to the jury. It further appeared that fifteen hours elapsed between the

delivery of the car to the transfer track, ready to be taken by the Great Northern Company, and its final delivery to the fair grounds by that company. In passing, the court said:

"Conceding the rule to be that the burden of proof is on the plaintiff to show negligent delay on the part of the carrier, and injury therefrom as the proximate result reasonably to be anticipated from the delay, we think there was enough evidence to take the case to the jury on these questions. The agents of the transfer company were also agents of the Great Northern in this sense, that it was only through the agents of the transfer company that the Great Northern Company could be advised that the car was ready for transportation by the latter company to its destination; and, as already stated, the agents of the Great Northern Company were advised without unreasonable delay of that fact. It appears also that the proper employees of the Great Northern Company were personally urged by the employees of the plaintiff to facilitate the delivery of the car at the fair grounds, and the jury might have properly found under the evidence that there was an unreasonable delay on the part of the employees of the Great Northern Company in taking the car to the fair grounds as requested. Other cars ready for transportation at the same time were in fact transferred by the Great Northern Company to the fair grounds in a much shorter time. If there was any special excuse, such as unusual rush of business at the particular time, for not more promptly delivering the car to the fair grounds, it was for the Great Northern Company to show that fact. The evidence in the record tends to negative any such excuse. That the contract would not relieve the carrier from liability for negligence in failing to transport the horses to their destination in a reasonable time is settled in the case of *Wisecarver v. Chicago, R. I. & P. Ry. Co.,* 141 Iowa, 121, 119 N. W. 532."

In *Cleve v. Chicago, etc., Ry. Co.,* 77 Neb. 166, 108 N. W. 982, 124 Am. St. Rep. 837, 15 Ann. Cas. 33, in the syllabus it is said:

"In order to recover damages for an alleged delay in the shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose."

See, also, *International, etc., v. Hynes et al.,* 3 Tex. Civ. App. 20, 21 S. W. 622; *Jolliffe v. Northern Pac. R. Co.,* 52 Wash. 433, 100 Pac. 977; *L. & N. R. Co. v. Bell,* 13 Ky. Law Rep. 393; 5 Am. & Eng. Enc. of Law, p. 254, and cases cited.

We are therefore of the opinion that the court did not err in overruling the demurrer to the evidence, and this notwithstanding the contract read:

"For the consideration aforesaid, it is expressly agreed that the live stock covered by this contract is not to be transported within any specific time, nor delivered at any particular hour, nor in season for any particular market."

This for the reason that, as plaintiff does not count upon a contract requiring the cattle to be "transported within any specific time," or "delivered at any particular hour," or "in season for any particular market," these contracts have nothing to do with this case.

In support of the next contention, which is that the court erred in overruling defendant's motion for peremptory instruction at the close of all the evidence, it is urged:

"If the court should indulge any inference on behalf of plaintiff which would justify the overruling of the demurrer to the evidence, then any such inference would be rebutted by the positive evidence on behalf of defendant that the regular schedules of its stock train would not enable it to reach the market within 36 hours."

While it is true that positive evidence was adduced to that effect, such evidence would not rebut anything in this case nor have anything to do with it that we can see. Much less would that schedule be conclusive on the court as to what was a reasonable time in which to transport this shipment to its destination, and make it the duty of the court, as a matter of law, to hold that the schedule was conclusive on that point, and instruct the plaintiff out of court. While defendant cites no authority even remotely sustaining this contention, *Texas & P. Ry. Co. et al. v. Currie,* 33 Tex. Civ. App. 277, 76 S. W. 810, holds the other way. In that case Currie recovered judgment in two separate amounts against two railroads, as connecting carriers, for damages resulting from delay in the transportation of cattle. Both companies

appealed.   One of the appellants assigned that the court erred in refusing to submit to the jury the special charge, as follows:

"The law gives the railway company a right to regulate the time to be occupied by its trains between Big Springs and Ft. Worth in the transportation of cattle, and the law further presumes that said time when fixed by it is reasonable."

In passing on this point, the court said:

"We are of opinion there is no such presumption of law. Article 4484, Sayles' Ann. Civ. St. 1897, cited by appellant, gives to railroad corporations 'the right to regulate the time and manner in which passengers and property shall be transported,' but, so far as we are advised, it has never been thought that such regulations would be enforced by the courts except where they were reasonable; and whether or not they are in any case reasonable is a question to be determined according to all the circumstances of such case.   Furthermore, it was not an issue of reasonableness of regulations, but a question of negligence"
—and affirmed the judgment.

The next assignment relates to the admissibility of evidence. After W. H. Shepard, an expert of some 30 years' experience in the handling of cattle, "had detailed the size of the pen, the mud hole, the fact that there were no hayracks to place hay in, and that there were no troughs in which to water the cattle, except hog troughs, which were full of mud; that the pens were on the main street of the town, and it was on Saturday, and the people passed back and forth and crawled up on the pens and caused the cattle to walk back and forth in the pen and through the mud hole; and that there was no place for them to lie down and rest, and they became restless, hooked and ran one another; and that they had mud on their legs and bellies, and were badly drawn when they arrived at Kansas City"—he was permitted to answer in the affirmative, over objection, the question: "Is that or not [what] contributed to their depreciation in value?" It is not contended that this was irrelevant.   Such it was not, being material to the issue joined.   The specific objection was that the question called for an opinion of the witness.   There is no merit in the objection, for the reason that the witness

had previously qualified as an expert, and hence was entitled to give opinion evidence.

The alleged error in giving instruction No. 2 will not be considered, for the reason that it is not attempted to set out the instruction *in totidem verbis,* as required by a rule of this court [Rule 25, 38 Okla. x].

There being no merit in the remaining assignments, the judgment of the trial court is affirmed.

All the Justices concur.