## ST. LOUIS & S. F. R. CO. v. PEERY.

No. 2432.    Opinion Filed March 3, 1914.

(138 Pac. 1027.)

1.  **CARRIERS—Shipment of Cattle—Liability for Negligence.** Where a common carrier receives cattle for transportation, it is his duty to carry them to their destination within a reasonable time, and, for a negligent failure so to do, an action will lie, whether the shipment be made under a special contract or not. In such case the owner of the property has a right of action, independent of any special contract he may have, and he is not bound to sue upon such contract or to set it out in his petition.

2.  **WITNESSES — Competency — Knowledge — Reasonable Time for Transportation.** Where witness was asked to state what was a reasonable time to transport cattle under a shipping contract between two certain points on defendant's line of road, which was objected to, "unless the witness knows the schedule time our trains are run" between those points, which was overruled, and the witness permitted to answer, held, no error.

3.  **CARRIERS—Delayed Shipment—Burden of Proof.** If, in a common-law action to recover damages for the breach of a shipping contract, whereby defendant undertook to safely transport certain cattle, it is shown that defendant failed to deliver the same in a safe condition within a reasonable time, a presumption of negligence arises, and the onus is upon the defendant to excuse itself from negligence.

(Syllabus by the Court.)

*Error from County Court, Grady County;*
*N. M. Williams, Judge.*

Action by Tom Peery against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

· *W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*F. E. Riddle,* for defendant in error.

TURNER, J. This was an action to recover damages for the failure to deliver, within a reasonable time, certain live stock which plaintiff had delivered to defendant, a common carrier,

to be transported from Cyril, Okla., to Kansas City, Mo., the alleged injury growing out of the shrinkage of the cattle and a decline of the market. The petition sets forth a common-law cause of action. For answer, after a general denial, defendant set up four special contracts, and pleaded a certain alleged exemption therein contained which reads:

"The company shall not be liable for delay caused by storms, rains, * * * obstructions in the track, or from any cause whatever."

And that:

" * * * Defendant specifically denies that its agent at Cyril, who executed these live stock contracts, had any authority to waive any of the provisions in said contracts; and for further answer and for further defense, said defendant says that it kept and performed each and every condition on its part, but plaintiff failed to keep any of the conditions on his part, and defendant pleads each and every condition of said contracts in bar of and as a defense to this action, and says that the property was not injured by or through the negligence of the defendant or any of its servants or employees."

After reply filed, in effect a general denial, and a specific denial that the shipment was made under the written contracts as alleged, there was trial to a jury, and judgment for plaintiff for $370.08, and defendant brings the case here. As plaintiff's right to recover depends upon his ability to show a negligent delay on the part of the carrier, and as it needs no citation of authority for our statement that none of the provisions of the contract limiting the common-law liability of the carrier are available as a defense against its negligence, the contracts need not be further noticed.

However, we will further say that, as far as the question of negligence is concerned, it makes no difference to the carrier whether the shipment was received subject to the common-law rule or whether it was carried subject to the terms of a special contract. In either event, it would be liable for all loss occasioned by its negligence, and no greater burden is cast upon it to defend against the charge of negligence in the former than in the latter case. The special contract figured more prominently in the trial of the cause than, under the circumstances, its im-

portance warranted, especially as there is no contention that any of its provisions in relation to notice of injury, opportunity to examine stock, time of commencing suit, etc., have been violated, or that any of its provisions attempt to or can protect the carrier against its own negligence.

The facts disclose that the cattle were loaded on defendant's train at Cyril, Okla., on May 29, 1909, at about four o'clock Saturday afternoon; that a reasonable time for making the shipment was from 24 to 34 hours, and that they should have reached their destination not later than four or five o'clock Monday morning in time for Monday's market; that, while in transit between Oklahoma City and Sapulpa, they were delayed by a washout; that defendant's servants were about three hours getting there and about two hours repairing the track, the injury to which was not caused by a flood, cloudburst, or any unusual rain; that the cattle got to Ft. Scott about six o'clock Sunday morning, and stayed there until about eight o'clock next morning, where they were unloaded, fed, and watered pursuant to U. S. Comp. St. Supp. 1911, pp. 1341, 1342, and arrived at Kansas City at 4:40 p. m. on Monday, May 31st, too late for that day's market, and that they were sold the next day in a greatly depreciated condition owing to the delay.

After plaintiff had testified as to his some ten or twelve years' experience in shipping cattle from Cyril to Kansas City over defendant's line, and that he knew what was a reasonable time in which to transport the same between those two points, he was asked to state what was a reasonable time. This question was objected to, unless the time was fixed. He was then asked:

"Q. Well, what was a reasonable time in May, 1909? A. I judge that from the time I had been shipping cattle from the same point afterwards."

Counsel for defendant:

"We object, and ask that the answer be stricken out, unless he knows the schedule time our trains are run from Cyril to Kansas City."

Upon the objection being overruled, there was an exception saved, and this is assigned for error. It not being made to ap-

pear in the brief of counsel what the schedule time of their trains between those points had to do with the question of what was a reasonable time to transport the stock in question between the two points, we pass to the next contention.. It is that the court erred in thus instructing the jury:

"You are charged that, if the defendant delayed the train upon which the plaintiff's cattle were being hauled while said cattle were in transit an unreasonable time, then burden of proof shifts to the defendant to show that said delay was unavoidable and could not have been avoided by the use of ordinary care and diligence, and, if you find from the evidence that said cattle were delayed an unreasonable time in transit, and the defendant has failed to show that said delay was necessary and could not have been reasonably avoided, and that the plaintiff did not select a contract waiving any damages that may have been sustained, as hereinafter charged, then your verdict shall be for plaintiff for such amount as you may find reasonable from all the evidence in the case."

There is no error in this. Moore in his work on Carriers (section 25) lays down the rule that where, as here, it is shown that the cattle were delivered to the carrier for shipment in good condition, and where, as here, the injury is not due to the neglect of any duty owing by the shipper, and where, as here, an unreasonable delay in transit is shown, that "neglect or want of that care which the law imposes upon it will be presumed on the part of the carrier, and the burden placed upon it to relieve itself from that presumption." This was, in effect, the charge of the court in *Richmond, etc., R. Co. v. Trousdale & Sons,* 99 Ala. 389, 13 South. 23, 42 Am. St. Rep. 69. In that case section 2 of the syllabus reads:

"If, in an action to recover damages for the breach of a contract of affreightment, whereby the defendant undertook to promptly and safely transport certain live stock, it is shown that the defendant failed to deliver such stock in a safe condition, within a reasonable time, a presumption of negligence arises, and the *onus* is upon the defendant to excuse itself from negligence."

In *Bosley v. Baltimore, etc., R. Co.,* 54 W. Va. at page 569, 46 S. E. at page 615, 66 L. R. A. 871, the court, quoting approvingly from Elliott on Railroads, vol. 4, sec. 1483, says:

"There is no fixed rule of law determining what will or will not constitute an unreasonable delay in all cases. The carrier is in all instances bound to use ordinary care and diligence to avoid unreasonable delay, but many elements must be taken into consideration in determining whether there was or was not unreasonable delay in the particular instance. The fact that there was unusual delay does not always show a breach of duty. * * * Where the delay is an unusual one, and is not explained, it is held to be *prima facie* evidence of negligence, but that in a case where there is only a slight delay the rule is different."

This is true whether the contract of shipment is in writing or not.

In *Southern Railroad, etc., v. Railey Bros.* (Ky.) 80 S. W. 786, the court in the syllabus said:

"Where a written contract for the shipment of live stock, as, expressed in the bill of lading, contains no stipulation as to the time within which the stock is to be delivered, the law implies a reasonable time, and the undertaking is broken if unusual delays occur, unless the carrier shows that the delay was caused by something beyond its control, or was unavoidable, or was a necessary incident to the prudent and proper management of its business."

In *Anderson v. A., T. & S. F. Ry. Co.*, 93 Mo. App. 677, plaintiff shipped over defendant's road three car loads of cattle from Marceline, Mo., to Chicago, Ill., for the market at that point. The suit was in damages for unreasonable delay in the shipment. No specific acts of negligence were made to appear; that is, no causes for delay were shown. The facts were, however, that plaintiff shipped the cattle at eleven o'clock a. m. on the 13th and they arrived at eleven o'clock a. m. on the next day, and that from thirteen to fifteen hours was the usual time for transportation between the two points. He further showed that delays occurred at more than one point of from two to four hours, and that other trains going towards Chicago passed them while thus delayed. The court held that this was sufficient to raise the presumption of negligence, and cast the burden on the defendant to explain the delay. See, also, *International, etc., v. Hynes et al.*, 3 Tex. Civ. App. 20, 21 S. W. 622; 5 Am. & Eng. Enc. of Law, p. 254, and cases cited.

There is no merit in the contention that the court erred when, in the last clause of this instruction, he charged the jury "and that the plaintiff did not select a contract waiving any damages that may have been sustained, as hereinafter charged, then your verdict shall be for the plaintiff. * * *" This for the reason that we cannot see how defendant can be prejudiced by a charge that made plaintiff's right to recover depend upon an exemption contained in a contract, which had nothing to do with this case, as we have seen. And, for this reason that this contract had nothing to do with this case, there was no error in the court's refusal to require plaintiff to make his petition more definite and certain by setting it out.

In *Wabash, etc., Ry. Co. v. McCasland,* 11 Ill. App. 491, the court, as stated in the syllabus, held:

"When a common carrier receives cattle for transportation, it is his duty to carry them to their destination within a reasonable time, and for a failure through gross negligence to do so an action will lie, whether the shipment was made under a special contract or not. In such a case the owner of the property has a right of action independent of any contract he may have, and he is not bound to sue upon his contract or to set it out in his declaration."

Neither did the court err in admitting evidence to the effect that an expense of $15 was incurred for feed for the cattle during the time the shipment was unnecessarily delayed. In *Louisville, etc., R. Co. v. Robinson* (Ky.) 36 S. W. 6, the syllabus reads:

"Where a carrier undertakes to ship live stock, and, by unreasonable delay, fails to deliver the shipment at the market on the day intended, it is liable for resultant injuries to the stock, and for the keep of it till it can be offered in the first regular market succeeding its arrival."

If there was error in admitting in evidence the unloading certificates to show when the cattle arrived, it was harmless, for the reason that the waybill, a record kept by and received from defendant by the commission company which sold the cattle, showed the same time of arrival.

Finding no error in the record, the judgment is affirmed.

HAYES, C. J., and KANE and WILLIAMS, JJ., concur; LOOFBOURROW, J., not participating.