## Georgia, Southern & Florida Railway Company et al. v. Makeever.

(Decided February 22, 1929.)

HUMPHREY, CRAWFORD & MIDDLETON for appellants Georgia, Southern & Florida Railway Company and Southern Railway Company.

TRABUE, DOOLAN, HELM & HELM for appellants Louisville & Nashville Railroad Company and Chicago, Indianapolis and Louisville Railway Company.

THOS. C. MAPOTHER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On the 17th of February, 1922, D. K. Young & Co. shipped a carload of 145 stock pigs from Sparks, Ga., consigned to the appellee at Rensselaer, Ind. At that time the country surrounding Sparks was known to be infected with hog cholera. Since there was no federal inspector at Sparks and no facilities there for inoculating the pigs, they were shipped under a permit which was issued by the Indiana authorities, and which authorized the shipment of the pigs on condition that they be promptly inoculated on their arrival at Rensselaer, Ind. The evidence shows that to all outward appearances these pigs were in a healthy condition when they were loaded on the railroad car at Sparks. Prior to being loaded, they had been kept in a public stockyard, and, as the record shows, any pigs which are kept together in any public pens are known as pigs which have been exposed to hog cholera. The loading of these pigs was completed at 7 p. m. on the day of February 17th. They moved over the appellants Georgia, Southern & Florida Railway Company and Southern Railway Company, to Atlanta, Ga., thence over the appellant the Louisville & Nashville Railroad Company to Louisville, Ky., and thence over the appellant Chicago, Indianapolis & Louisville Railway, hereafter called the Monon, to Rensselaer, Ind. They did not arrive at Rensselaer until almost 6 o'clock on the evening of February 23d, which was Thursday, and were not unloaded until the following morning. In the course of their transit, the pigs were under the federal laws (45 USCA sec. 71), requiring that stock after having been in transit for 36 hours be unloaded, watered, fed, and rested for at least 5 hours, unloaded at Atlanta, Ga., Lebanon, Ky., and Cloverdale, Ind. When unloaded, fed, and

rested at Lebanon, the pigs were active, drank their water, ate their food with relish, and seemingly were in the best of health. At Cloverdale, however, two of the pigs were found dead in the car, and the rest appeared to be sick. When delivered at Rensselaer, six more of the pigs were dead, and the rest were in a very weakened and gaunt condition. The evidence over-whelmingly and without real dispute establishes that, when delivered at Rensselaer, these pigs were suffering from hog cholera, and, although the serum treatment was promptly administered to them on their arrival, yet within a few days after they reached Rensselaer 133 of them, including those which had died in transit, were dead. An autopsy performed on some of the pigs dis-closed all of the symptoms of hog cholera. Averring that the shipment of these pigs from Sparks, Ga., to Rensse-laer, Ind., had been unreasonably delayed by the appel-lants, and that such delay had resulted in the death of these pigs, appellee brought this suit to recover the value of these pigs, and on the trial secured a judgment for $1,463. From that judgment this appeal is prosecuted.

The appellants first contend that they were entitled to a peremptory instruction. They base this contention on two grounds: (a) Because the evidence fails to show any unreasonable delay on their part in handling this shipment; and (b) because, even if there was any such delay, the evidence fails to show that it caused the death of these pigs. As to ground (a), it is admitted that these pigs were delivered to the appellant, Georgia, Southern & Florida Railway Company, at 7 o'clock on the evening of February 17th, and were not delivered to the Louisville & Nashville at Atlanta until 5 o'clock on the evening of February 19, 1922. Although the running time between Valdosta, Ga., the point of departure for the freight train which picked up this carload of pigs at Sparks, Ga., (some 20 miles away from Valdosta) and Atlanta, was only 20 hours and 25 minutes, and, although a train was scheduled to leave Valdosta on the evening of the 17th at 6:05 p. m., and although the loading of the pigs was completed in ample time for this train to pick up as it did this car containing these pigs, and although it is ad-mitted that the transfer in Atlanta from the Southern Railway to the Louisville & Nashville takes only about 4 hours, the admitted facts establish that, instead of taking the 20 hours and 25 minutes' running time plus the 4

hours' transfer time to go from a point 20 miles beyond Sparks to Atlanta, this shipment took almost 46 hours from the time these pigs were delivered to the Georgia Southern at Sparks until they were delivered to the Louisville & Nashville at Atlanta. There is not a shadow of an explanation in this record why these pigs were delayed 20 hours or better from the time they left Sparks until they were delivered to the Louisville & Nashville. True it is that they were fed and watered at Atlanta, but had they not been 7 hours late, as they were, in arriving at that point, there would have been no necessity for resting and feeding the pigs at this piont. The evidence also shows that, after the pigs had been given the statutory rest at Atlanta, they could have been delivered to the Louisville & Nashville in time to catch the manifest train leaving on the morning of February 19th. Instead, they were not delivered to the Louisville & Nashville until the evening of that day, and when there was no train scheduled to leave until 8:45 p. m.

Unquestionably it was for the jury to say whether, in the absence of any explanation for the delay of this shipment between Sparks and delivery to the Louisville & Nashville at Atlanta, such delay was unreasonable, especially in view of the evidence that shipments of live stock such as the one here in question go forward on what is known as "manifest freight," which maintains a sched ule almost comparable to that of passenger traffic. Therefore, so far as the appellants Georgia, Southern Railway and Southern Railway are concerned, there is no merit in their contention that the evidence fails to show unreasonable delay on their part.

The Louisville & Nashville received this shipment at 5 p. m. on February 19th, and it reached Louisville at 5:25 p. m. on February 21st, approximately 48 hours after its receipt by the Louisville & Nashville. The appellee's own evidence discloses that the very best time for live stock carriage over the Louisville & Nashville between Atlanta and Louisville is 36 hours, which, of course, means from the time the train leaves Atlanta until it reaches Louisville. But, when this shipment was delivered to the Louisville & Nashville at 5 o'clock on February 19th, there was no train then leaving Atlanta for Louisville, and the next train was not scheduled to leave until 8:45 p. m. Of course, the Louisville & Nashville could not control the delivery of the pigs to it, and

496

it is not shown that a failure to have a freight train scheduled for departure under approximately 4 hours after the delivery of the pigs to the carrier constituted any unreasonable delay in forwarding the shipment. The pigs having been in its custody 4 hours, even though it be conceded that the running time to Louisville would consume 36 hours, it is obvious that a period of feeding, rest, and watering would have to take place somewhere between Atlanta and Louisville. In fact this was the feeding and rest of 5 hours which the pigs got at Lebanon. This period of 5 hours, plus the 4 hours at Atlanta, taken from the 48 hours consumed in transporting the pigs from Atlanta to Louisville, leaves a 39-hour run of actual running time, and, when it is considered that some dislocation of time necessarily took place when the pigs were unloaded at Lebanon for feeding and rest, we cannot say that the record establishes any unreasonable delay in the transportation of these pigs from Atlanta to Louisville by the Louisville & Nashville, especially in view of appellee's evidence that 36 hours is a reasonable running time for this character of freight between these two points. The delivery of this shipment at Louisville by the Louisville & Nashville to the Monon took 6 hours. Appellee does not claim that at the quickest such transfer would consume less than 4½ to 5 hours. In view of this, it cannot be said that the delivery time of 6 hours without more raises any presumption of any unreasonable delay. Therefore, as to the appellant Louisville & Nashville Railroad Company, its position that the evidence discloses no unreasonable delay on its part is well taken, and its motion for a peremptory instruction should have been sustained.

The pigs were delivered to the Monon at 11:25 p. m. on February 21, 1922, and did not reach Rensselaer until 5:40 p. m. on February 23, 1922, or a period of 42 hours. They were not unloaded until the following morning, another period of over 12 hours. The Monon says that it immediately notified the appellee of the arrival of the pigs when they reached Rensselaer. Appellee denies this, and says he was not notified until the following morning, when he promptly unloaded the pigs. It is, of course, for the jury to say which is the correct version of this transaction. In this 42-hour period is included a period of 4 hours layover at Louisville before a train departed for Rensselaer and a 5-hour period of rest and feed at

Cloverdale. If these periods be eliminated, we still have a journey of 251 miles, consuming 31 hours' time, or an average of about 8 miles per hour. Again it must be remembered that the appellants held themselves out as ready, able, and willing to carry this character of freight as "manifest freight," which, as stated, is transported on a schedule, comparable to that of passenger traffic. The Monon contends that it did transport this freight without delay *according to its schedules,* but, as we said in Maloney v. Cleveland, C. C. & St. L. Ry. Co., 207 Ky. 262, 268 S. W. 1103:

> "Railroad companies are not insurers against delay in shipment of freight, but are required to exercise reasonable diligence to forward same with dispatch. Adams Express Co. v. Burr Oak Jersey Farm, 182 Ky. 116, 206 S. W. 173; Louisville & Cin. Packet Co. v. Bottorff, 77 S. W. 920, 25 Ky. Law Rep. 1324; 10 C. J. pp. 283-285."

> "Naturally the kind and character of freight is a factor to be considered in determining diligence, as a delay that would destroy perishable articles might not affect other commodities (10 C. J. 286, 287); nor are the companies' schedules controlling in this matter. Such a schedule is competent in evidence, but is not conclusive on the issue, which is whether or not the transportation and delivery were made within a reasonable time. St. L. & St. F. Ry. Co. v. Perry, 40 Okl. 432, 138 P. 1027; St. L. & S. F. Ry. Co. v. Shepard, 40 Okl. 589, 139 P. 833; Dickinson v. Seay, 71 Okl. 66, 175 P. 216; M. K. & T. Ry Co. v. Dunn (Tex. Civ. App.) 157 S. W. 434."

In view of the fact that no explanation other than "schedules" was given why this fast manifest freight, excluding starting time at Louisville and layover time at Cloverdale, did not average better than 8 miles per hour on this trip from Louisville to Rensselaer, and in view of the evidence that this journey should not have consumed anything lke the time it did, and in view further of the evidence as to a failure to notify the consignee of the arrival of his pigs for almost 12 hours after they reached Rensselaer, it was, as we held in the Maloney case, supra, for the jury to say whether there was any unreasonable delay on the part of the Monon in the transportation of these pigs. Hence its motion for a peremptory on this ground was properly overruled.

Passing now to ground (b), relied upon for the peremptory instruction requested, we find that it is well settled in this state that, where a recovery is sought for sickness occurring to live stock while in transit or for death resulting from such sickness, the plaintiff must show, not only that the carrier was negligent in transporting the live stock, but also that such negligence was the proximate cause of the illness or death of the live stock. Illinois Central R. R. Co. v. Word, 149 Ky. 229, 147 S. W. 949; L. & N. R. R. Co. v. Wathen, 49 S. W. 185, 22 Ky. Law Rep. 82; L. & N. R. Co. v. Warfield, 98 S. W. 313, 30 Ky. Law Rep, 352; L. & N. R. Co. v. Cecil, 145 Ky. 271, 140 S. W. 186; Id., 155 Ky. 170, 159 S. W. 689. There is no evidence in this case that the unreasonable delay of the appellant carriers, conceding there was such delay, caused the pigs to be infected with the germs of hog cholera, which, it is admitted, is a germ disease. The evidence shows that it takes from 7 to 9 days for the germs of hog cholera to incubate in the hogs. As these hogs on their arrival at Rensselaer were then all infected with cholera, and as they had been on the road but 6 days, they must have been infected before they left Sparks, Ga. While it is true that the appellee's evidence discloses that the long delay in the transportation of these pigs tended to weaken their constitution and therefore to render them more liable to become infected with hog cholera, it does not show that they were infected by hog cholera anywhere along the road. It is not enough to show that they might have been infected. The appellee must show that the unreasonable delay caused them to be infected. However, the appellee produced in the testimony of the veterinarian, Dr. Lang, evidence to show that, had these pigs been treated with the serum treatment within 4 or 5 days after an exposure to the hog cholera germ, from 70 to 80 per cent. of them could have been saved. It is true that the appellants vigorously contested this evidence of Dr. Lang, but it was for the jury to say whether it believed him or their veterinarians. The appellants' own proof established that when these pigs were rested and fed at Lebanon on February 21st, 4 days after they had left Sparks, Ga., they were to all outward appearances in an excellent state of health. They ate their food with relish, drank the water freely, and moved about with alacrity. Had they been seriously ill with hog cholera, they would not, as the veterinarians testified, have done

so. There was evidence to show that a reasonable time for transporting these pigs from Sparks, Ga., to Rensselaer, Ind., was not more than 4 days. If the jury believed, as they had a right to do from the evidence in this case, that the pigs should have been transported within such period of time, and the failure to do so was occasioned by the appellants not exercising ordinary care to avoid delaying the shipment beyond this reasonable time, then there was evidence to warrant a finding that, although the pigs had been infected with hog cholera before they left Sparks, Ga., as from 70 to 80 per cent. of them could have and would have been saved by an application of the serum treatment 4 or 5 days after such exposure, and as the pigs were seemingly in a healthy condition on the fourth day, the loss of this 70 to 80 per cent. of the shipment was caused by the negligent delay of the appellants in transporting these pigs so that they could not be so treated. It follows, then, that the appellants Georgia, Southern & Florida, Southern, and Monon railroads were not entitled to a peremptory instruction on ground (b).

The complaint of these named carriers as to the instruction which permitted the appellee to recover for the 133 pigs which died, when on his own proof the death of only 80 per cent. of them at the maximum could be attributed to any unreasonable delay on their part, is well founded. The instructions should have limited the jury to the maximum damages shown by the evidence. L. & N. R. Co. v. Ashley, 169 Ky. 330, 183 S. W. 921, L. R. A. 1916E. 763. Appellee proved that his pigs were worth $11 apiece, and there was no other evidence offered by either side bearing on this point. The jury's finding of $1,463 for the appellee recompensed him at this price for all of the 133 pigs which died. But, under his own proof, not exceeding 80 per cent. of these pigs could have been saved. The failure to confine the jury in its finding to such percentage was, under the facts of this case, prejudicial.

For this error, the judgment must be reversed, with instructions to grant the appellants Georgia Southern & Florida, Southern, and Monon railroads a new trial in conformity with this opinion, and with the further instruction that, if the evidence on the next trial be the same as on the last, to sustain the motion of the appellant Louisville & Nashville for a peremptory instruction in its favor.